

FILED & JUDGMENT ENTERED
David E. Weich

Feb  17  2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.  09-30765 |
| FRANK A. WOLBERT ) | Chapter 7 |
| CHRISTINE A. WOLBERT ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| JOHN W. TAYLOR, Trustee for ) | Adv. No. 09-3177 |
| The Bankruptcy Estate of ) | |
| Frank A. Wolbert and ) | |
| Christine A. Wolbert, and, ) | |
| LINDA W. SIMPSON, Bankruptcy ) | |
| Administrator, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| FRANK A. WOLBERT and, ) | |
| CHRISTINE A. WOLBERT, ) | |
| Defendants. ) | |
| _____) | |

**ORDER DENYING DEBTOR/DEFENDANTS' MOTION TO QUASH
AND FOR PROTECTIVE ORDER**

This matter is before the Court upon (1) the Debtor/Defendants', Frank A. Wolbert and Christine A. Wolbert ("Wolberts"), Motions to Quash Subpoena and for

1

Protective Order filed December 4, 2009 and (2) the Response thereto filed by the Trustee/Plaintiff John W. Taylor on December 16, 2009.

A hearing was held on December 17, 2009. The matter was submitted to be decided on the case record, arguments of counsel, and the parties' pleadings. The Wolberts were afforded a post-hearing opportunity to reply to the Trustee's response. Their Reply was filed on January 8, 2010. An Amended Reply was filed on January 11, 2010.

**PRIOR PROCEEDINGS & STATEMENT OF FACTS**

The Wolberts filed this Chapter 7 case on March 31, 2009. Attorney John O'Connor ("O'Conner") is the Wolberts' attorney. His office, particularly paralegal Wendy Bigalow ("Bigalow"), prepared and filed the Woberts' bankruptcy Petition, statements and schedules (collectively the "Petition").

John W. Taylor ("Trustee") is the Chapter 7 Trustee in this case. Co-Plaintiff Linda W. Simpson is the Bankruptcy Administrator for this judicial district ("Bankruptcy Administrator").[1] A creditor's meeting was held in this case on May 17, 2009.

---

[1] Simpson is apparently a nominal Plaintiff.  The Trustee has been the active party Plaintiff.

2

Early in the case, the Trustee became concerned that the Wolberts had not disclosed all of their assets and transfers in the Petition. To investigate, on June 11, 2009, he conducted a Rule 2004 examination of the Wolberts. At that examination, the Trustee confirmed that the Wolberts had failed to list several assets and quite a few prepetition transfers in the Petition. (Adversary Proc. No. 09-3177, Docket No. 1, Compl. ¶ 7; Adversary Proc. No. 09-3177, Docket no. 10, Answer ¶ 7.)

The undisclosed assets included a money market account, a stock holding, stereo speakers, and an IRA account. More than a dozen prepetition transfers were also omitted. Finally, the Trustee learned that the Wolberts had understated their anticipated income tax refund in the Petition by $10,571.

After the examination, the Wolberts amended their Petition to schedule, and then attempted to amend Schedule C so as to exempt, these newly discovered assets. (Case No. 09-30765, Docket No. 26, Amended Official Form 6, Schedule A; Case No. 09-30765, Docket No. 26, Amended Official Form 6, Schedule B; Case No. 09-30765, Docket No. 24, Motion to Amend Debtors' Exemption Elections; Case No. 09-30765, Docket No. 25, Motion to Amend Exemptions.) The Trustee objected to these new exemption claims, due to the

Wolberts' prior failure to disclose these assets in the Petition. (Case No. 09-30765, Docket No. 28, Objection to Exemptions.) The exemption matter was set for hearing, but is as yet unresolved.[2]

Meanwhile, the Wolberts' case was selected for audit by the Administrative Office of the U.S. Courts under 28 U.S.C. §586(f)(1). The resulting auditors' report finds the Wolberts' Petition to contain material misstatements.[3] (Case No. 09-30765, Docket No. 33, Report of Audit.)

Based upon these nondisclosures, on September 4, 2009, the Trustee and the Bankruptcy Administrator filed this adversary proceeding objecting to the Wolberts' discharge under §§ 727(a)(2), (3), (4) and (5). Their complaint accuses the Wolberts of a variety of legal misdeeds including willfully concealing and disposing of assets, making willfully false oaths, and knowingly and fraudulently withholding information from the Trustee.

The Wolberts generally admit their failure to accurately disclose their assets and prepetition transfers. They acknowledge that most of these items should have been

---

[2] At a hearing on September 28, 2009, it was determined that the exemption objection be heard with this adversary proceeding.
[3] The report cites the Wolberts' failure to disclose transfers of property outside the ordinary course of business as required by Statement of Financial Affairs, Question #10.

4

listed in the Petition.[4] However, the Wolberts maintain their failures to disclose were inadvertent non-fraudulent acts. To their credit, the Wolberts have now turned over the undisputedly nonexempt part of their tax refund. They further informed the Court that they are holding the remainder of the disputed assets pending a ruling on their exemption claims. (Case No. 09-30765, Docket No. 42, Report Pursuant to Disposition of Hearing.)

**The Current Dispute**

In his Initial Pre-Trial Disclosures, the Trustee listed both O'Connor and O'Connor's paralegal, Bigalow, as persons having relevant, discoverable information about the Debtors' case, in other words, as potential witnesses.

Then, on November 24, 2009, the Trustee noticed depositions in the action. In addition to subpoenaing the Wolberts, the Trustee served a summons on Bigalow. The Wolberts filed this motion in response.

**PARTIES POSITIONS**

Procedurally, the Wolberts object to O'Connor and his staff being listed in the Trustee's Rule 26(a) disclosures. Their substantive objection, however, is to these persons being witnesses at all, based upon the attorney-client

---

[4] The Debtors maintain that disclosure in the Statement of Financial Affairs was not required for some of the transfers. (Adversary Proc. 09-3177, Docket No. 10, Answer ¶ 10.)

5

privilege. Effectively, the Wolberts ask the Court to quash Bigalow's subpoena and exclude Debtors' counsel and staff as witnesses in the cause.

The Trustee counters that he was required by Bankruptcy Rule 7026 and the Court's Initial Pre-trial Order to disclose all potential witnesses. Neither authority requires an opponent's permission to list a particular witness nor do such authorities contemplate objections.

As to the Wolberts' privilege assertions, the Trustee offers three counter arguments: (1) the privilege(s) does not exist as to information required to be disclosed in the Petition, a public document; (2) the privilege has been waived by the Wolberts' assertion of attorney error as a defense to this action; and (3) the privilege has been forfeited under the crime-fraud exception.

### DISCUSSION

**I. Rule 26 Procedural Issue**

The procedural issue need not detain us, because the Trustee is correct insofar as that goes. Rule 26 contains no provision for objections to a party's initial disclosures of persons having discoverable information. Accordingly, that part of the Wolberts' motion is **DENIED.**

6

However, the Rule 26 argument is only window dressing. The real dispute is over the Trustee's desire to depose and obtain discovery from Bigalow, and potentially O'Connor.[5]

## II. Attorney-Client Privilege

### A.  Generally

The attorney-client privilege promotes full and frank communications between attorneys and clients. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). The privilege protects both "the giving of legal advice to those who can act on it and the giving of information to the lawyer to enable him to give sound and informed advice." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004).

Because this adversary proceeding involves a federal cause of action (an objection to Discharge under 11 U.S.C § 727), the federal common law of attorney-client privilege applies. Fed. R. Evid. 502; *see also Virmani v. Novant Health, Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001).

The elements of the attorney-client privilege are as follows:

> (1) the asserted holder of the privilege is or sought to become a client;

---

[5] At the hearing, the Trustee stated that he also wanted to depose O'Connor. Procedural niceties aside, whether he may do so is an important issue in this action and both sides have joined the question in their arguments. We will address that question on the merits.

7

```
           (2) the person to whom the communication was
                made
                (a) is a member of the bar of a court,
                     or his subordinate and
                (b) in connection with this
                     communication is acting as a
                     lawyer;
            (3) the communication relates to a fact of
                  which the attorney was informed
                (a) by his client
                (b) without the presence of strangers
                (c) for the purpose of securing
                     primarily either
                     (i) an opinion on law or
                     (ii) legal services or
                     (iii) assistance in some legal
                       proceeding, and
                (d) not for the purpose of committing a
                     crime or tort; and
           (4) the privilege has been
           (a) claimed and
           (b) not  waived by the client.
```

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

Since the privilege "impedes the full and free discovery of the truth," it is "narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id*. The party invoking the attorney-client privilege has the burden of demonstrating its applicability. *See id*.

    **B.  Does the Privilege Extend to Information Required to be Disclosed in a Bankruptcy Petition?**

Those few courts that have considered this question have generally concluded that the attorney-client privilege

8

does not extend to information disclosed by a prospective debtor to an attorney for inclusion in their bankruptcy petition and schedules. *See* Hon. Barry Russell, *Bankruptcy Evidence Manual*, Article V: Privileges, Rule 501: General Rule, BKRMANUAL § 501:18 (citing *In re* Eddy, 304 B.R. 591, 596 (Bankr. D. Mass. 2004); *U.S. v. White*, 950 F.2d 426, 430(7th Cir. 1991); *In re* French, 162 B.R. 541, 548 (Bankr. D. S.D. 1994)). Nor does it shelter advice given in reply by the attorney. *See id.*

These cases reason that a bankruptcy debtor has accepted a congressionally mandated bargain: "[I]n exchange for an automatic stay of creditor collection activity and potential discharge of certain debts, debtors are obligated to disclose all of their assets and liabilities." Russell, *Bankruptcy Evidence Manual* at §501:18 (citing *White*, 950 F.2d at 430). Full and accurate disclosure of a debtor's finances is necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor. *In re* French, 162 B.R. at 548.

With complete financial information both required and necessary to a bankruptcy case, these cases conclude that a debtor has no reasonable expectation that information disclosed to an attorney for the assembly of a bankruptcy petition and schedules will be kept confidential. *In re*

9

Eddy, 304 BR at 596; *accord White*, 950 F.2d at 430; *In re* French, 162 B.R. at 548.

Of course, where the client has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. *In re* Eddy, 304 BR at 596; *accord White*, 950 F.2d at 430; *In re* French, 162 B.R. at 548.

Consequently, in appropriate instances, these courts have required production of: (1) prior drafts of the petition and interview notes (*White*, 950 F.2d at 430-31); (2) all documents used to prepare the petition and schedules (*In re* French, 162 B.R. at 548); and even production of the debtor-attorney's entire bankruptcy file (*In re* Myers, 382 B.R. 304, 311 (Bankr. S.D. Miss. 2008)). Similarly, both debtor's counsel and staff have been required to testify as to these matters. *White*, 950 F.2d at 430-31; *In re* French, 162 B.R. at 548 (allowing the deposition of attorney's paralegal relating to client communications during preparation and administration of the bankruptcy case).

On the other hand, and as another bankruptcy court has pointed out, a prospective debtor's communications with counsel typically go beyond merely revealing information to include in the petition. Such conversations also entail legal advice on whether to file bankruptcy and what

10

information should be included in the schedules. As such, at least one court has treated all of these matters as falling within the attorney-client privilege. *In re Stoutamire*, 201 B.R. 592, 596 (Bankr. S.D. Ga. 1996).

The Fourth Circuit has not addressed whether the attorney-client privilege shields communications between debtor and attorney relating to information required to be included in a debtor's bankruptcy petition. However, the Circuit Court has addressed the privilege versus public document issue in other contexts. For example, in *In Re Grand Jury Proceedings*, 727 F.2d 1352, 1358 (4th Cir. 1984), the Circuit Court held that client communications to a lawyer relating to the preparation of a proposed securities prospectus for use by the client in the enlistment of investors were not confidential, even though that prospectus was never published. *Id*.

*In re* Grand Jury Proceedings relies heavily on a client expectations of confidentiality, or the lack thereof: "communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others." *Id.* at 1357 (quoting *U.S. v. Tellier*, 255 F2d 441, 447 (2d Cir. 1958)). In *In re* Grand Jury Proceedings, the proposed prospectus on

11

which counsel was consulted "was to be published to others" meaning it "was not intended to be kept in confidence." *In re* Grand Jury Proceedings, 727 F.2d at 1358.

Based on the established rule that "the privilege itself is not favored" and is to be "strictly confined within the narrowest possible limits," the Circuit Court concludes "all information given [to the attorney] ... connected with the subject-matter of the proposed issuance of participations is without the protection of the attorney-client privilege." *Id*. The attorney could be compelled to testify. *Id.* This exception from the attorney-client privilege extends not only to the information communicated by the client to his attorney, but also "the details underlying the data which was published." *In re* Grand Jury Proceedings, 727 F.2d at 1356 (quoting *U.S. v. Cote*, 456 F2d 142, 145 (8th Cir. 1972)).

The Fourth Circuit reaffirmed the *Grand Jury Proceedings*' holding later that year in the case of *U.S. v. (Under Seal)*, 748 F.2d 871, 871 (4th Cir. 1984). Here, an attorney had advised a client about the merits of establishing an offshore corporation. In furtherance, he had also prepared a proposed tax ruling for the client's consideration.

12

During a grand jury investigation of that client, the Government sought production from the lawyer of all records relating to her client. The attorney resisted. Once again, the Fourth Circuit held that the attorney client privilege did not apply, because the resulting document (the tax ruling) was not intended to be confidential.

After quoting extensively from *In re* Grand Jury Proceedings, the Circuit clarifies its prior decision in several respects:

1) Where a client employs an attorney to research the possibility of filing public papers the privilege applies. *Under Seal*, 748 F.2d at 875;

2) The privilege is lost "[o]nly when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published..." *Id*. at 876;

3) When the privilege is lost in this fashion, the waiver extends not only to the public document, but also "...as to the subject matter of those communications." *Id*.;

4) Such "underlying details" include the following:

   a) communications relating to the data;

   b) the document, if any, to be published containing the data;

   c) all preliminary drafts of the document, and

    d) any attorney's notes containing material necessary to the preparation of the document. *Id.*

Also falling within the exception are documents, "the contents of which were necessary to the preparation of the published document." *Id*. n.7.

    After reviewing a variety of file documents submitted for in camera examination, the *Under Seal* panel held most not to be privileged. The Court required their turnover to the grand jury.

    Applying these authorities to the case at issue, the documents and conversations between the Wolberts and O'Connor's office concerning matters required disclosures in the petition should not be privileged. The information the Wolberts disclosed in their initial conference with O'Conner and Bigalow concerning their assets and transfers would clearly fall within the attorney-client privilege, at least at that point in time. Any communications between client and counsel during that meeting would also be privileged.

    However, after the decision was made that the Wolberts would file bankruptcy, under circuit precedent and the majority view of bankruptcy courts, the privilege was lost, at least as to matters required to be disclosed in the Petition.

14

Obviously, O'Connor was retained by the Wolberts to prepare the Wolberts' Petition; a "public document" intended to be disclosed to others. There could be no reasonable expectation of confidentiality by the Wolberts as to the data required to be disclosed therein. Since a Petition encompasses all of a debtor's finances, the Wolberts' assets and transfers would be included.

Under the aforementioned Fourth Circuit cases, it would appear likely that the privilege has been lost by the Wolberts as to the Petition, all preliminary drafts of the document, all documents necessary to the preparation of the Petition, all communications relating to that data between the Wolberts and counsel or his staff; and any attorney's notes containing material necessary to the preparation of the document.

For bankruptcy attorneys accustomed to treating all of their client communications as sacrosanct, this is an eye opening conclusion. It is a conclusion that this Court is loathe to reach. As Judge Walker notes in *Stoutamire*, a great deal of legal analysis and advice goes into a petition. *In re* Stoutamire, 201 B.R. at 596. In consumer cases, much of this legal work occurs at the intake interview. If all of these communications are potentially

15

subject to disclosure, it will be more difficult to give legal advice and fewer prospective debtors will seek it.

Therefore, until a higher court weighs in on the topic, this Court believes requiring such involuntary disclosures should be the rare exception, not the norm. In this case, mandating these disclosures appears warranted on the facts presented. Fortunately, today's decision does not rest solely upon this theory.

### C.  Waiver by Raising as a Defense

Another reason that these matters are not privileged,[6] is that the Wolberts have asserted on multiple occasions to the Trustee and now to this Court, that their nondisclosures were due to attorney errors. In their Answer, the Wolberts sought to excuse their Petition nondisclosures as being "inadvertent" mistakes. This defense was first explained during the Wolberts' 2004 examinations when the debtors and counsel attributed these omissions to errors made by Mr. O'Connor:

> Mr. O'Connor: Both of those would be omissions on our office's part, not on the part of my client,

---

[6] There is one other reason not to recognize the privilege in this case that was not raised by the Trustee. The Wolberts have attempted to assert the privilege generally, and without making the required document by document or question by question assertions. It is well known that the privilege may not be asserted in this fashion, as blanket thrown over an undifferentiated group of documents. *U.S. v. El Paso Co.*, 682 F.2d 530, 541-42 (5th Cir. 1982); *In re* Conner Bonds Litigation 1989 WL 67334, *1 (E.D.N.C. 1989).

16

just clerical errors. (2004 Exam of Frank A. Wolbert, p. 10, line 25 and p. 11, lines 1-2).

Mr. O'Connor: I'm sure those are clerical errors. (2004 Exam of Frank A. Wolbert, p. 11, lines 8-9).

Mr. Wolbert: It was an omission that was, in my view, clarified with the attorneys. (2004 Exam of Frank A. Wolbert, p. 14, lines 14-15).

Mr. O'Connor: Yeah, that would've been our error as well. (2004 Exam of Frank A. Wolbert, p. 22, lines 15-16).

Mr. O'Connor: It should be. And to the extent that it's not disclosed on this document, you'd save a lot of time- we've already established a few times over that these omissions on the part of the preference 90-day payments are clerical errors on the part of my office. So if you just painstakingly go through each one in this melodramatic way, it's kind of absurd. It's a clerical error and we've established that. So I'd appreciate for all of our time if you can, you know, just take note of that and move on. (2004 Exam of Frank A. Wolbert, p. 28, lines 1-10).

Mr. O'Connor: To the extent that there's something not listed in the bankruptcy schedules, the Wolberts have been very forthcoming about their assets and their property. So to the extent that there's something not listed, that would be an error from my office, the 90-day payments as we just discussed and the- and this as well. So we'll chalk it up to that. (2004 Exam of Frank A. Wolbert, p. 34, lines 16-22).

Mr. Taylor: So they disclosed the 401(k) to you?
Mr. O'Connor: Absolutely, yeah. They did. Yes. (2004 Exam of Frank A. Wolbert, p. 34, lines 23-24).

17

Further after the 2004 exams, in O'Connor's letter to the Trustee dated June 19, 2009, he outlines in detail the omissions for which he claims responsibility and the omissions that he attributes to the Wolberts.  The same assertions were made by counsel in the arguments over this motion.

These voluntary disclosures made to a third party regarding what the Wolberts did and did not tell their attorney waived the attorney-client privilege, for two reasons.

First, an "implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege." *Hawkins v. Stables*, 148 F.3d 379, 394 n.4 (4th Cir. 1998). By telling the Trustee and the Court that this is what happened, these allegedly privileged matters have been disclosed to others.

Second, a party defending his actions upon advice of counsel waives the attorney-client privilege as to the entire subject matter of the defense. *AKEVA L.L.C. v. Mizuno Corp.* 243 F.Supp.2d 418, 422 (M.D.N.C. 2003); *In re* Myers, 382 B.R. 304, 309-10 (Bankr. S.D. Miss. 2008); *In re* Fortune Natural Resources Corp., 350 B.R. 270, 274 (Bankr.

E.D. La. 2005); *In re* Snell, 232 B.R. 684, 685 (Bankr. S.D. Ohio 1999).

The basis for the rule is clear:

> Once a party has used communications between himself and his attorney as a claim or defense, it would be unfair to deny the opposing party discovery of the only information relevant to such claim or defense on a claim of privilege. Such use of the attorney-client privilege would transform it from a defense against intrusion into a weapon in the battlefield of litigation. *In re* Fortune Natural Resources Corp., 350 B.R. at 274; *see also In re* Meyers, 382 B.R. at 309; *In re* Snell, 232 B.R. at 685.

The gravamen of the Plaintiff's discharge objection is that the Wolberts willfully concealed their assets and transfers and by doing so made willfully false oaths in their Petition. The Wolberts are defending this action based upon the assertion that their errors were innocent mistakes. Now we know the specifics of the assertion: that the Wolberts disclosed these matters to their counsel, but he and his office failed to include them in the petition.

Since the Wolberts are defending based on attorney error, under *AKEVA* and the other case authorities, it is clear that they have waived the attorney-client privilege as to the entire subject matter of what they did and did not disclose to counsel.

**D.  Crime Fraud Exception Applies**

The Trustee's final assertion that the crime fraud exception[7] vituperates the Wolberts' attorney-client privilege, is much more involved, and more problematic. It would likely require a detailed privilege log and a lengthy in camera review to determine whether the exception applies. Because the Trustee's other two theories have established his right to obtain discovery from O'Connor and Bigalow, we need not engage in this exercise.  The Court does not reach the question of whether the crime fraud exception applies.

Accordingly, the Wolberts' Motion to Quash Subpoena and For Protective order is **DENIED**. The Trustee may seek discovery from O'Connor and Bigalow, including taking their depositions, consistent with the terms of this ruling.

**SO ORDERED.**

**This Order has been signed           United States Bankruptcy Court
electronically.  The judge's
signature and court's seal
appear at the top of the Order.**

---

[7] Under the "crime fraud" exception, the attorney-client privilege ceases when it is abused, "when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." *U.S. v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986).

20